Catron, Ch. J.
delivered the opinion of the court, (a)
Andrew Henderson made his last will and testament, and appointed Joseph R. Henderson and Charles F. Keith his executors. The will was proved, but it, together with the record thereof was destroyed by fire when the court house of Monroe county was burnt. Thomas Henderson proved that he wrote the first part of the will, and being called upon to prove its contents, he stated, “that the first part of the will empowered the executors to sell his estate, after the special legatees should be satisfied. That he gave in said will a life estate to his son, Robert N. Henderson, in the northeast quarter section of the reservation, and the remainder of said quarter section in fee to Robert’s children; that the residue of his estate was to be equally divided among the balance of his children, except Mrs. Nancy Peck, who was to have fifty dollars, to be paid to her by his executors. Witness had seen and read the schedule to said will, and it was in the schedule, that the executors were specially empowered to sell the real estate. The words “real estate” were not inserted in the first part of the will.”
*19 Charles F. Keith renounced, and Joseph R. Henderson was qualified as executor.
To obtain possession of the land, to sell it as directed, the executor prosecuted this action of ejectment.
The only question worthy of being considered is, whether by the will, the executor took such title as will sustain the ejectment. 1
The executors were empowered to sell the real estate, says the witness. We take the words communicating the authority or right to be “I empower my executors to sell my real estate.” Is this a power coupled with an interest? If so, the executor may recover the possession; or is it a naked power, which did not break the descent? If the latter, the estate is outstanding in the devisees of Andrew Henderson, and the lessee has no title. Had the devisees of Andrew Henderson brought the action, could they have recovered the land? If not, then the fee must rest in Joseph R. Henderson. We think, by the language employed, no title was intended to be vested in the executors, and feel very sure that were Joseph R. Henderson to die, the lands of the late Andrew Henderson would not descend to the heirs of Joseph. Coke says “If a man by his last will deviseth that his executors shall sell his land, and dieth, the executors have neither right or title, but only a bare authority.” (Co. Litt., sec. 446 and comment.) This passage has been the subject of extensive comment, but we think has never been shaken, although severely criticised by Mr. Hargrave in his note on this section; certainly high authority generally, but disregarded in the instance referred to. Kent, in his commentaries, (vol. 4, page 314,) gives the distinction, and .accords his approbation to the authority of Coke, as does Sir Edward Sugden, in his treatise on powers; and indeed almost every distinguished writer and judge since the days of Coke, and we think with good reason, although often it works a gross hardship, as in this instance. Yet, to say the exe *20 cutor should take possession of the whole real estate, and . , 1 , _ , i,, i t receive the rents and profits where he had a naked power to sell for the payment of debts, and take his own time to sell and pay the debts, would generally be injurious to the heirs of the testator, and frequently would put it in the power of the executor to ruin them. The late revision of the statutes of New York declares, “that" a devise of lands to executors or other trustees, to be sold or mortgaged, where the trustees are not also empowered to receive the rents and profits, shall vest no estate in the trustees; but the trust shall be valid as a power, and the lands shall descend to the heirs, or pass to the devisees of the testator, subject to the execution of the power.” Thus a community equally intelligent with any in the Union, when legislating on the subject of the often contested clauses in wills, CCI devise my lands to my executors, to be by them sold, to pay my debts,” &c. and CCI direct my executors to sell my lands to pay my debts,” has fixed a construction of the statute on the first recited clause, contrary to the well defined legal meaning of centuries. If the executor is to receive the rent, the testator must say so in the will. Then, and then only, the fee passes. This says much in support of the policy that protects the heir in the enjoyment of the lands during the administration of the estate, often protracted to many years. 4 Kent. Com. 315.
These brief remarks have been made in answer to the argument which assumes for the executor, that the rule extracted from Coke is grossly unreasonable. As a general rule, it certainly is not, but as applied to particular cases, it often may be; yet it is a well settled rule of property, and cannot be disturbed, or even shaken, without endangering titles.
The executor is generally empowered to sell for the payment of debts. He does so to a very small extent, and the heirs partition and dispose of the great body of the estate by sale. If the title is decided to be in the *21 executor, in the present cause, it will upturn many convey anees made by heirs and devisee; for it can be safely assumed that the terms employed by Andrew Henderson have never, in this State been liolden, or supposed to break the descent; and the assertion will be hazarded, that if the present contest had been between the devisees of Andrew Henderson, and the heirs of Joseph R. Henderson, the present question would not have been raised in the circuit court. But the attempt to deprive both the executor and devisees of the land, has resulted in the prostration, on the trial below, of a settled rule of property, which no particular case of hardship will justify. A court of law cannot help the executor to execute the power. The judgment must therefore be reversed, and the cause remanded for another trial.
Judgment reversed.

 Peck, J. absent,